UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| BEVERLY J. HOLMES-DILTZ, ) | Case No. 19-45615-659 |
| ) | Chapter 13 |
| ) | |
| Debtor. ) | |

### O R D E R

The matter before the Court is Debtor's Objection to Proof of Claim Filed by Wells Fargo, Amended Debtor's Objection to Proof of Claim Filed by Wells Fargo and Notice, Response to Debtor's Amended Objection to Claim, Memorandum in Support of Debtor's Opposition to Claim No. 1 and to the Objections Filed in that Claim by Creditor Wells-Fargo USA Holdings, Inc., Memorandum in Support of Wells Fargo USA Holdings, Inc.'s Objection to Confirmation of Debtor's Second Amended Plan, Objection to Confirmation of Debtor's Fourth Amended Plan, Amended Response to Debtor's Objection, Amended Objection to Confirmation of Debtor's Fifth Amended Plan and Debtor's Response to Wells Fargo [sic] Amended Objection to Confirmation of Debtor's Fifth Amended Plan. Upon consideration of the record as a whole, the Court makes the following

**FINDINGS OF FACT:**

On July 29, 2019 (hereinafter "Petition Date"), Beverly J. Holmes-Diltz (hereinafter "Debtor") filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois (hereinafter "Illinois Bankruptcy Court"). On August 18, 2019, Order Granting Motion to Transfer Venue (hereinafter "Venue Transfer Order") was entered by the Illinois Bankruptcy Court, which transferred venue of Debtor's case to the United States Bankruptcy Court for the Eastern District of Missouri. *See* Doc. No. 1.

Debtor is the owner of residential real estate located at 4009 Westminster Place, St. Louis, Missouri (hereinafter "Westminster Property"). Wells Fargo USA Holdings, Inc. (hereinafter "Creditor") has a loan secured by the Westminster Property and evidenced by a Note and Deed of Trust dated February 1, 2008. *See* Proof of Claim No. 1-1, pages 8-27.

Debtor's Schedule A/B, filed on the Petition Date, listed real estate that Debtor owned that included the Westminster Property, a single-family home with a current value of $140,000.00, and 3129 Samuel Shepard Drive, St. Louis, Missouri, a single-family home that is "inhabitable" with a current value of $4,000.00. Debtor's Schedule A/B further indicated that Debtor only has an interest in the Westminster Property. Debtor's Schedule A/B also noted that the Westminster Property was purchased in 2002 for $149,000.00, refinanced in 2008 and subject to a loan modification in 2014. Debtor's Schedule A/B also listed other real estate at 3919 Washington Boulevard, St. Louis, Missouri that is office space.

On August 12, 2019, Creditor filed Proof of Claim No. 1-1 (hereinafter "Claim No. 1-1") in the amount of $315,548.13 secured by the Westminster Property. *See* Claim No. 1-1, ¶7. Creditor indicated on Claim No. 1-1 that the claim "is secured by the debtor's principle residence" described as the Westminster Property and a recorded mortgage and deed of trust as the basis for perfection. *See* Claim No. 1-1, ¶9. Creditor attached a Mortgage Proof of Claim Attachment (Official Form 410A) with Claim No. 1-1. *See* Claim No. 1-1, Official Form 410A. Creditor also attached a copy of the Note, Deed of Trust, Home Affordable Modification Agreement and a Wells Fargo Mortgage Statement (hereinafter "Mortgage Statement") dated August 2, 2019 marked "for informational purposes only" explaining the terms of Debtor's mortgage loan pertaining to the Westminster Property. *See* Claim No. 1-1. The Mortgage Statement is addressed to Debtor at 4009 Westminster Place, St. Louis, Missouri, which is the address of the Westminster Property. *See* Claim No. 1-1, Wells Fargo Mortgage Statement. Claim No. 1-1 did not list a value of the Westminster Property. *See* Claim No. 1-1, ¶9.

On August 18, 2019, when the Illinois Bankruptcy Court entered the Venue Transfer Order which transferred venue to this Court, the Illinois Bankruptcy Court found "[t]he real estate owned by Diltz and located at 3919 Washington shows an owner mailing address of 4009 Westminster Pl., St. Louis, Missouri 63108 registered with the City of St. Louis, State of Missouri." *See* Doc. No. 1, ¶6. Additionally, "Diltz's 2005 GMC Hummer H2 is registered in the State of Missouri with a registration address of 4009 Westminster Pl., St. Louis, Missouri 63108." *See* Doc. No. 1, ¶5. The

Illinois Bankruptcy Court also found "[t]here is no credible evidence that Diltz currently resides anywhere other than within the Eastern District of Missouri." *See* Doc. No. 1, ¶12.

Debtor amended her petition and schedules on October 27, 2019 (*See* Docs. 26, 27, 29); November 5, 2019 (*See* Docs. 35, 38, 39); November 14, 2019 (*See* Docs. 45, 46, 48); November 27, 2019 (*See* Doc. 55); December 13, 2019 (*See* Doc. 61); December 31, 2019 (*See* Doc. 73); January 3, 2020 (*See* Docs. 75, 76); February 13, 2020 (*See* Doc. 92); and February 25, 2020 (*See* Doc. 98) (hereinafter collectively "Amended Schedules"). The Amended Schedules cover a wide gamut of information. Debtor added creditors, changed valuations, added a business, added income, amended expenses, added property values for personal property and added places lived in the last 3 years.

The Amended Schedules filed on October 27, 2019 changed the answer to Question 2 of the Statement of Financial Affairs from "no" to "yes" indicating that Debtor had lived other than where she lives now in the last 3 years and further indicating that Debtor lived at 3129 Samuel Shepard Drive, St. Louis, Missouri from October 1, 2017 to December 19, 2018 and lived at the Westminster Property from November 2, 2002 to September 30, 2017. The Amended Schedules filed on November 5, 2019 changed who has an interest in the Westminster Property from "Debtor 1 only" to "[a]t least one of the debtors and another". The Amended Schedules filed on November 5, 2019 also changed the dates that Debtor lived at 3129 Samuel Shepard Drive, St. Louis, Missouri to now be from October 2017 to May 2019.

On November 20, 2019, Creditor filed Proof of Claim No. 1-2 (hereinafter "Claim No. 1-2") in the amount of $315,548.13 secured by the Westminster Property. *See* Claim No. 1-2, ¶7. Creditor indicated on Claim No. 1-2 that the claim "is secured by the debtor's principle residence" described as the Westminster Property and a recorded mortgage and deed of trust as the basis for perfection. *See* Claim No. 1-2, ¶9. Creditor attached a Mortgage Proof of Claim Attachment (Official Form 410A) with Claim No. 1-2. *See* Claim No. 1-2, Official Form 410A. Creditor also attached a copy of Residential Valuation Services (RVS) - Desktop Appraisal dated July 11, 2019

showing an appraised value of $235,000.00. Proof of Claim 1-2 also list the value of the Westminster Property at $235,000.00. *See* Claim 1-2, ¶9.

On November 27, 2019, Debtor filed Debtor's Objection to Proof of Claim Filed by Wells Fargo (*See* Doc. 57) stating that on November 4, 2019, Debtor obtained a property value appraisal from Landfair Corporation, an appraisal company previously used by Creditor in November 2017, for the Westminster Property, which valued the Westminster Property at $140,000.00 as listed on Debtor's Schedule D. *See* Debtor's Objection to Proof of Claim Filed by Wells Fargo, Exhibit. On December 2, 2019, the Clerk's Office issued Notice to Filer of Errors in Electronically Filed Documents (*See* Doc. 58) noting that the filing was incomplete in that the Certificate of Service was not signed. On December 6, 2019, Debtor filed Amended Debtor's Objection to Proof of Claim Filed by Wells Fargo and Notice, which included a signed Certificate of Service and Negative Notice Language (*See* Doc. 60).

On December 24, 2019, Creditor filed Response to Debtor's Amended Objection to Claim (*See* Doc. 72) in which Creditor asserted that Creditor's claim is secured by what was Debtor's principal residence when the loan was originated.

On March 9, 2020, Debtor filed Memorandum in Support of Debtor's Opposition to Claim No. 1 and to the Objections Filed in that Claim by Creditor Wells-Fargo USA Holdings, Inc. (*See* Doc. 100) in which Debtor stated that although the Westminster Property was once Debtor's principal residence, it is now used for commercial purposes in that it is rented and is a source of income for Debtor. Debtor also alleged that what was her principal residence was left to move to Chicago and that Debtor was living in Chicago in an apartment as Debtor's principal residence when Debtor filed the Chapter 13 petition. *See* Memorandum in Support of Debtor's Opposition to Claim No. 1 and to the Objection Filed in that Claim by Creditor Wells-Fargo USA Holdings, Inc. Debtor's Fourth Amended Chapter 13 Plan filed on March 11, 2020 proposed to modify the secured claim of Creditor by reducing it to the fair market value of the Westminster Property alleged to be $140,000.00 by Debtor.

On March 19, 2020, Creditor filed Objection to Confirmation of Debtor's Fourth Amended Plan (*See* Doc. 104) and asserted that Creditor's claim is based upon the Note and Deed of Trust secured solely by Debtor's principle residence at the time the loan was originated. *See* Objection to Confirmation of Debtor's Fourth Amended Plan, ¶4.

On April 17, 2020, Creditor filed Amended Response to Debtor's Objection (*See* Doc. 111) that attached an appraisal dated November 27, 2019. On November 27, 2019, Creditor had an appraisal of the Westminster Property that indicated a value of $216,000.00 based upon comparable sales and $263,000.00 based upon a replacement cost approach. *See* Amended Response to Debtor's Objection, ¶2; Exhibit A.

On May 1, 2020, Creditor filed Amended Objection to Confirmation of Debtor's Fifth Amended Plan (*See* Doc. 115) in which Creditor noted Creditor's post-petition advances made for taxes and insurance for the Westminster Property. On May 19, 2020, Debtor filed Debtor's Response to Wells Fargo [sic] Amended Objection to Confirmation of Debtor's Fifth Amended Plan (*See* Doc. 117) indicating that Debtor disputed the issues of unpaid real estate taxes and insurance and that Debtor would pay them at a later date or provide proof in opposition. Debtor also stated that Debtor's residence before moving to Chicago was 3129 Samuel Shepard Drive, St. Louis, Missouri and not the Westminster Property.

Debtor argues that the objection to Creditor's claim is valid in that the Westminster Property is not Debtor's principal residence as of the Petition Date and that the Petition Date is the time to make this determination. Debtor further argues Debtor moved from the Westminster Property to 3129 Samuel Shepard Drive in 2017 and then moved from 3129 Samuel Shepard Drive, Debtor's principal residence, to Chicago and that Debtor was living in Chicago as Debtor's principal residence when Debtor filed the Chapter 13 petition.

Creditor argues that the Westminster Property should be deemed as Debtor's principal residence regardless of whether the Petition Date or the loan origination date is used. Creditor further argues that if the Westminster Property is no longer Debtor's principal residence then the

-5-

Westminster Property is not necessary for an effective reorganization and should be surrendered by Debtor.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 151, 157, and 1334 and Local Rule 89.9-01(B) of the United States District Court for the Eastern District of Missouri.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) (2019). Venue is proper in this district under 28 U.S.C. § 1409(a) (2019).

## CONCLUSIONS OF LAW

The Court must determine not only if the Westminster Property is Debtor's principal residence but also whether this determination should be made as of the Petition Date or the date of the original loan made by Creditor to Debtor.  The Court resolves the matter below.

There are three approaches – Petition Date Approach, Loan Date Approach and Hybrid Approach – to deciding the date used to determine whether real property is a debtor's principal residence for purposes of Section 1322(b)(2) of the Bankruptcy Code which provides that a debtor's Chapter 13 plan "may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence…"  11 U.S.C. § 1322(b)(2) (2019).  Section 1322(b)(2) prevents the modification of a claim which is secured solely by a debtor's principal residence. *In re Bosch*, 287 B.R. 222, 225 (Bankr. E.D. Mo. 2002).  The Eighth Circuit Bankruptcy Appellate Panel has said: "A plain reading of §1322(b)(2) requires that in order for the anti-modification provision to apply, the claim must both be secured only by an interest 'in real property' and further, that the real property must be the 'debtor's principal residence.'" *In re Coleman*, 392 B.R. 767, 770 (B.A.P. 8th Cir. 2008).

No court in the Eighth Circuit has weighed in as to which of the three approaches are best to apply.  The Court therefore analyzes the (1) Petition Date Approach, (2) Loan Date Approach, and (3) Hybrid Approach based on the pertinent facts and circumstances of this case.

**A.  Petition Date Approach**

-6-

Most courts have determined that the critical date for deciding whether a creditor qualifies for Section 1322(b)(2) protection is the date that the petition is filed. *In re Howard*, 220 B.R. 716, 718 (Bankr. S.D. Ga. 1998). To determine whether a claim is secured solely by a debtor's principle residence or by additional collateral, the court should resort to the language of the loan agreement as it exists at the time of the filing of the petition. *Id.* While it is acknowledged that Section 1322(b)(2) lacks explicit reference to its timing, the use of the word "claim" within the anti-modification clause has been held to signify that the petition date should be the court's focus, since a "claim" in "bankruptcy arises at the date of the filing of the petition." *In re Wetherbee*, 164 B.R. 212, 215 (Bankr. D.N.H. 1994). Weighing the circumstances as they exist at the time the petition is filed, conforms to the provision's use of the present tense "is" coupled with the anti-modification clause providing "other than a claim secured only by a security interest in real property that is the debtor's principal residence." *In re Baker*, 398 B.R. 198, 203 (Bankr. N.D. Ohio 2008).

In the present case, the Court takes into consideration the language of the mortgage loan agreement between Debtor and Creditor that existed at the time of the filing of Debtor's bankruptcy petition in the Illinois Bankruptcy Court. Creditor provided documentation such as a copy of the recorded Deed of Trust and the Note to support that Claim No. 1-2 is secured by Debtor's principle residence. Creditor also filed a Mortgage Proof of Claim Attachment (Official Form 410A) with Claim No. 1-2 that listed the Westminster Property as Debtor's principal residence. After Debtor filed her Chapter 13 bankruptcy petition on July 29, 2019, Creditor sent on August 2, 2019 a mortgage statement "for information purposes only" to Debtor regarding the Westminster Property addressed to Debtor at the address of the Westminster Property.

Debtor argues her principal residence was left to move to Chicago and that Debtor was living in Chicago as her principal residence when Debtor filed the Chapter 13 petition. However, the Venue Transfer Order determined "[t]he real estate owned by Diltz and located at 3919 Washington shows an owner mailing address of 4009 Westminster Pl., St. Louis, Missouri 63108 registered with the City of St. Louis, State of Missouri." Furthermore, the Venue Transfer Order also determined that "Diltz's 2005 GMC Hummer H2 is registered in the State of Missouri with a

-7-

registration address of 4009 Westminster Pl., St. Louis, Missouri 63108." Lastly, the Illinois Bankruptcy Court found in the Venue Transfer Order that "[t]here is no credible evidence that Diltz resided anywhere other than within the Eastern District of Missouri." The Court notes that on the original Schedule A/B, Debtor described the Westminster Property as a single-family home with a current value of $140,000.00 and described 3129 Samuel Shepard Drive, St. Louis, Missouri 63108 as a single-family home that is "inhabitable" with a current value of $4,000.00. Debtor's original Schedule A/B also described 3919 Washington Boulevard, St. Louis, Missouri 63108 as other, meaning not a single-family home. Since Debtor's property at 3129 Samuel Shepard Drive is valued at $4,000.00, the fact that Debtor list the Westminster Property address as Debtor's mailing address for owner of the 3919 Washington Boulevard property and for registration of Debtor's vehicle, the Court find it reasonable to equate the Westminster Property as Debtor's principle residence.

Under the Petition Date Approach, the date of the filing of the petition is used to determine a debtor's principal residence. Courts use the petition date as a majority view to determine a debtor's principal residence status. Given the totality of the circumstances, this Court finds Debtor's principle residence to be the Westminster Property as of the Petition Date. Since Creditor has a security interest in the Westminster Property only and it is Debtor's principal residence on the Petition Date, the anti-modification provision of Section 1322(b)(2) would apply under this approach.

### B. Loan Date Approach

The Loan Date Approach uses the date when the creditor takes a security interest in the real property as the relevant date for determining a debtor's principal residence status. *In re Scarborough*, 461 F.3d 406, 408 (3d Cir. 2006). "The reasoning behind this position is based largely on the concern that a contrary reading could lead to debtor manipulation; if a date other than the transaction date is utilized, debtors could seek to nullify the application of the anti-modification clause by modifying the use of their property immediately prior to filing." *In re Kelly*, 486 B.R. 882, 884-85 (Bankr. E.D. Mich. 2013). The phrase "real property that is the debtor's principle

residence" modifies the antecedent term "security interest."  *In re Smart*, 214 B.R. 63, 67 (Bankr. D. Conn. 1997).  The *Smart* court decided that Section 1322(b)(2) was subject to at least two credible interpretations—it could be read as referring to the home's status as the debtor's principal residence at either the present time or at the time the security interest was created. *Id.*  Concluding that the statute was ambiguous, the *Smart* court looked to the legislative history of Section 1322(b)(2) and decided that it was intended to "encourage and sustain a flow of affordable capital into the home lending market." *Id.* at 68.  Fearing that debtors might manipulate their place of residence after the loan date and in anticipation of bankruptcy, the *Smart* court concluded the mortgage transaction date best served the Congressional purpose of the flow of capital to the mortgage lending market. *Id.*

Applying the Loan Date Approach to the present case at hand, Creditor took a security interest in the Westminster Property on February 1, 2008, which is the mortgage transaction date, for determining Debtor's principal residence status as evidenced by this Court's review of the Note and Deed of Trust.  Using the Loan Date Approach safeguards the bankruptcy process and removes the opportunity for debtor manipulation—if a date other than Debtor's mortgage transaction date is utilized.  While Debtor could seek to nullify the application of the anti-modification clause by modifying the use of Debtor's property immediately prior to filing, this Court is not able to make that specific determination based on the facts presented before it. Also, the Court notes the Loan Date Approach is the minority view among courts.

**C. Hybrid Approach**

The Hybrid Approach considers "both the circumstances as they exist on the petition date as well as the underlying agreement." *In re Baker*, 398 B.R. 198, 203 (Bankr. N.D. Ohio 2008).  The Hybrid Approach seeks to address the dual policy concerns "of creditors and debtors attempting to manipulate the application of the anti-modification clause." *Id.*  Specifically, factual findings under Section 1322(b)(2) should be made by reference to the status of the parties' agreement, including any agreements, as it exists on the petition date. *Id.*  "There is no need to look beyond the language of the agreement as it existed between the creditor and the debtor at the time of the filing of the

petition." *In re Howard*, 220 B.R. 716, 718 (Bankr. S.D. Ga. 1998); *See also In re Bosch*, 287 B.R. 222, 227 (Bankr. E.D. Mo. 2002).

In the present case, the Hybrid Approach satisfies the dual concerns of creditors and debtors by taking into consideration Debtor's Petition Date, July 29, 2019, which would make it impossible for Creditor to unilaterally disavow, on a post-petition basis, a security interest in non-residential property for the purpose of gaining anti-modification clause protection. On the contrary, looking to the loan agreement affords Creditor the benefit of its bargain by preventing Debtor from later modifying the use of the Westminster Property for the purpose of denying Creditor the anti-modification clause protection. As stated above, Creditor holds a security interest in the Westminster Property. At the time Debtor filed for bankruptcy protection, the security interest held by Creditor continued to reflect a security interest in the Westminster Property. To put it differently, when Debtor filed for bankruptcy protection on July 29, 2019, Creditor's claim was secured by the real estate at the Westminster Property which then constituted Debtors' principal residence. The security interest Creditor held against the Westminster Property was permanent as to the loan agreement with Debtor as evidenced by the Note and Deed of Trust. Under these circumstances, this Court will apply the term "principal residence" as provided in the anti-modification clause under Section 1322(b)(2), in a plain reading of the statute, to the Westminster Property encompassing the security agreement between Debtor and Creditor. To hold otherwise, would impede upon the anti-modification clause's purpose to encourage the stream of capital in the home lending market by adding protection to creditors making home loans to borrowers.

In viewing the facts and circumstances after analyzing the three approaches to this case, this Court adopts the majority view that the Petition Date Approach is the appropriate date by which to determine Debtor's principle residence status. This Court further adopts the view that the anti-modification provision applies in this case because Creditor has a security interest in the Westminster Property which is Debtor's principle residence. Like most courts that have addressed this issue, this Court agrees that the plain reading of Section 1322(b)(2) turns to the present and not the past. Seeing that the Westminster Property, securing Creditor's claim, is Debtor's principal

residence on the Petition Date, the claim will be subject to the anti-modification provision. Accordingly, the date to determine Debtor's principal residence is at the time Debtor's Chapter 13 bankruptcy petition was filed. This Court observes Congress' concern with Section 1322(b)(2) if debtors are allowed to reduce their mortgage payments on their principle residence over the life of their Chapter 13 bankruptcy plan, the ability of mortgage lenders to extend affordable credit to mortgage borrowers would be impacted.

For the foregoing reasons, the Court finds that Debtor's principal residence for the purposes of Section 1322(b)(2) is the Westminster Property at the point in time of the Petition Date. The Court further finds that Creditor's Claim No.1-2 is secured only by a security interest in Debtor's principle residence and, as such, is protected by the anti-modification provision of Section 1322(b)(2). Therefore,

**IT IS ORDERED THAT** Debtor's Objection to Proof of Claim Filed by Wells Fargo and Debtor's Amended Objection to Proof of Claim Filed by Wells Fargo are **OVERRULED** and Creditor's Claim No. 1-2 is allowed as filed as a fully secured claim; and

**IT IS FURTHER ORDERED THAT** Creditor's Amended Objection to Confirmation of Debtor's Fifth Amended Plan is **SUSTAINED**.

*Kathy A. Surratt-States*

KATHY A. SURRATT-STATES
Chief United States Bankruptcy Judge

DATED: August 19, 2020
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO  63102

Diana S. Daugherty
Chapter 13 Trustee
P. O. Box 430908
St. Louis, MO 63143

Dana O'Brien
McCalla Raymer Leibert Pierce, LLC
1 N. Dearborn
Suite 1200
Chicago, IL 60602

Wesley T. Kozeny
Bonial & Associates, P.C.
12400 Olive Blvd., Suite 555
St. Louis, MO 63141

Laurence D. Mass
230 S Bemiston Ave
Suite 1200
Clayton, MO 63105

Beverly J. Holmes-Diltz
181 Ash St
Park Forest, IL 60466-1447

Toni Townsend
McCalla Raymer Leibert Pierce, LLC
1 N. Dearborn
Suite 1200
Chicago, IL 60602